FILED
United States Court of Appeals
Tenth Circuit

November 3, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

SHANNON CAVANAUGH; BRAD
CAVANAUGH,

      Plaintiffs - Appellees,

v.

WOODS CROSS CITY; DANIEL
DAVIS,

      Defendants - Appellants.

No. 10-4017

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 08-CV-00032-TC-BCW)**

---

R. Blake Hamilton (and Peter Stirba of Stirba & Associates, on the briefs), Salt
Lake City, Utah, for Defendants - Appellants.

Kathleen E. McDonald (Bret M. Hanna and Travis M. Wilson of Jones, Waldo,
Holbrook & McDonough, P.C., with her on the brief), Salt Lake City, Utah, for
Plaintiffs - Appellees.

---

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

---

**KELLY**, Circuit Judge.

Defendants-Appellants Woods Cross City, Utah and Officer Daniel Davis appeal from the district court's order denying their motion for summary judgment based on qualified immunity. Plaintiffs-Appellees Shannon Cavanaugh and Brad Cavanaugh had sued Defendants-Appellants under 42 U.S.C. § 1983 alleging that Officer Davis's Tasering of Ms. Cavanaugh violated her rights under the Fourth Amendment by using excessive force. Though not a final judgment, our jurisdiction over the legal issues in this qualified immunity appeal arises under 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We affirm.

## Background

Although several material facts in this case are disputed, we "view the facts and draw reasonable inferences in the light most favorable to . . . the party opposing the summary judgment." Scott v. Harris, 550 U.S. 372, 378 (2007). Accordingly, we view the facts supported by evidence in the light most favorable to the Cavanaughs, notwithstanding that the officer maintains that his use of the Taser was precipitated by his knowledge that Ms. Cavanaugh may have had a knife and was verbally and physically non-cooperative. Aplt. App. 64-65 at 244-45.

On the night of December 8, 2006, three officers from the Woods Cross City Police Department responded to a non-emergency call placed by Brad Cavanaugh. Id. 41 at 53. Mr. Cavanaugh's call requested help finding his wife,

Shannon, who had stormed out of the house after a domestic dispute. Id. 42 at 55. Upon the officers' arrival, Mr. Cavanaugh narrated the events of the evening—namely, that he and Shannon had a fight, during which Shannon attempted to put him in a closet; that Shannon had consumed alcohol and pain medication; and that Shannon had left the home with a kitchen knife. Id. 20.

After this conversation, Officers Schultz and Moore left the house to search for Mrs. Cavanaugh. Id. Officer Davis remained inside with Mr. Cavanaugh. Id. After a short period of time, James Murphy, the Cavanaughs' neighbor, observed Ms. Cavanaugh walking down the sidewalk towards her home. Aplee. App. Doc. 4 at 22. He specifically looked at her hands—which were clearly visible by her side—and saw that she was not holding a knife. Id. As Ms. Cavanaugh approached her home, Officer Davis exited the house and began walking down the driveway. Id. at 23.

As Officer Davis and Ms. Cavanaugh drew within several feet of each other, Ms. Cavanaugh veered off the walkway towards the front door, cutting across the lawn. Aplt. App. 21; Aplee. App. Doc. 4 at 23-24. She walked quickly, but did not run. Aplt. App. 21; Aplee. App. Doc. 4 at 24. Officer Davis gently placed his flashlight and clipboard on the ground and followed her, no more than six feet behind. Aplee. App. Doc. 4 at 24-25. He fumbled with his holster for a brief moment, removed his Taser, and discharged the Taser into Ms. Cavanaugh's back without warning. Id. at 25. Ms. Cavanaugh, whose feet were

on the front steps of her home, went rigid, spun around, and struck her head on the concrete steps. Id. at 26. As a result of this fall, Ms. Cavanaugh suffered a traumatic brain injury. She later plead guilty to assault-domestic violence and intoxication. Aplt. App. 57-58.

Following these events, Mr. and Ms. Cavanaugh filed suit against Officer Davis and Woods Cross City alleging excessive force in violation of the Federal Constitution. The Cavanaughs also brought various state-law tort and constitutional claims. Officer Davis moved for summary judgment on qualified immunity grounds, claiming that his actions did not violate the constitution and, if they did, that the law was not clearly established at the time. See Aplts. Motion for Summary Judgment, Doc. 102 at 2; Doc. 103 at 10-19.[1] Woods Cross City also moved for summary judgment, arguing that no constitutional violation had occurred and, in any event, that the City's policies or customs were not the moving force behind Officer Davis's actions. See Doc. 102 at 2; Doc. 103 at 20-21

The district court rejected Officer Davis's qualified immunity defense, holding that a reasonable jury could conclude that Officer Davis's conduct

---

[1] The Defendants-Appellants inexplicably did not include their motion for summary judgment (let alone the supporting memorandum, response and reply) as required by Tenth Circuit Rule 10.3(A) & (D)(2). We have accessed material needed for our review, through the electronic docket, though we are not required to do so. See Burnett v. Southwestern Bell Telephone, L.P., 555 F.3d 906, 908-10 (10th Cir. 2009); 10th Cir. R. 10.3(B).

constituted excessive force under <u>Graham v. Connor</u>, 490 U.S. 386 (1989), and <u>Casey v. City of Federal Heights</u>, 509 F.3d 1278 (10th Cir. 2007).  Aplt. App. 24-26.  The district court further held that the law was clearly established at the time of the incident.  <u>Id.</u> at 26.  The district court also denied Woods Cross City's motion for summary judgment.  Although Plaintiffs-Appellees conceded the constitutionality of the written policy, the district court found enough evidence for a jury to conclude that the City had a constitutionally deficient unwritten Taser policy.  The City's police chief had testified to this effect.  <u>Id.</u> at 28.

On appeal, Officer Davis argues that his conduct did not violate the Constitution, and, if so, that the law was not clearly established at the time.  <u>See</u> Aplt. Br. at 7-8.  Woods Cross City argues that it cannot be liable because no constitutional violation occurred.  <u>See</u> <u>id.</u> at 25.  Woods Cross City does not challenge the district court's conclusion regarding the City's unwritten Taser policy.

Discussion

The Defendants-Appellants' opening brief takes issue with the district court's characterization of the facts based upon the evidence—which is really an attack concerning evidentiary sufficiency.  Of course, jurisdiction in a qualified immunity appeal extends only to the district court's legal conclusions and we so limit our analysis.  <u>See</u> <u>Thomas v. Durastanti</u>, 607 F.3d 655, 662 (10th Cir. 2010).

Our review of a summary judgment decision is de novo.  <u>Berry & Murphy,</u>

-5-

P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 808 (10th Cir. 2009).  However, "[b]ecause of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions."  Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc) (internal quotation marks and citation omitted).  When a defendant moving for summary judgment asserts qualified immunity, the court must conduct a two-part analysis:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009) (citations omitted).  Thus, we must determine whether the Plaintiffs—in this case, the Cavanaughs—have made this two-part showing.  See Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1183 (10th Cir. 2009).

A.    Constitutional Violation

Whether an officer's actions are objectively reasonable in light of stipulated facts "is a pure question of law."  Scott, 550 U.S. at 381 n.8.  Under the facts presented by the Cavanaughs, Officer Davis's actions were objectively unreasonable and violated the Fourth Amendment.

Excessive force claims are governed by the Fourth Amendment's "objective reasonableness" standard.  See Graham, 490 U.S. at 388; Casey, 509 F.3d at

1281-82.  Under this standard courts must "careful[ly] balance . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396. (internal quotation marks and citation omitted).  "The ultimate question 'is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'"  Casey, 509 F.3d at 1281 (quoting Graham, 490 U.S. at 397).  More specifically, courts determine whether the officer's use of force was reasonable given the severity of the suspected crime, the immediate threat to the officer or others, and whether the suspect was actively resisting arrest or evading arrest by flight.  See Graham, 490 U.S. at 396; Casey, 509 F.3d at 1281-82.

We must take care to judge the situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.  Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements . . . about the amount of force that is necessary in a particular situation."  Id. at 396-97.

Applying the Graham analysis to the facts in the light most favorable to the Cavanaughs, Officer Davis's conduct was objectively unreasonable.  Officer Davis's weapon of choice was a Taser—a weapon that sends up to 50,000 volts of electricity through a person's body, causing temporary paralysis and excruciating

pain.  See Casey, 509 F.3d at 1285; Bryan v. MacPherson, 608 F.3d 614, 620 (9th Cir. 2010); Draper v. Reynolds, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004) (describing the effects of Tasers).  Although Tasers may not constitute deadly force, their use unquestionably "seizes" the victim in an abrupt and violent manner.  Accordingly, the "nature and quality" of the intrusion into the interests of Ms. Cavanaugh protected by the Fourth Amendment was quite severe.

Continuing with the analysis, Officer Davis's use of force was not justified by any of the Graham factors.  To the extent that Officer Davis suspected Ms. Cavanaugh of any crime at all—he responded to Mr. Cavanaugh's non-emergency request for help finding Ms. Cavanaugh, not to a report of a criminal activity—he was investigating a non-injurious assault.  This is a class B misdemeanor under Utah law.  See Utah Code Ann. § 76-5-102.  Thus, to the extent Ms. Cavanaugh was suspected of any crime, it was minor.

Second, if the facts marshaled by the Cavanaughs are correct, Ms. Cavanaugh did not pose an immediate threat to Officer Davis or anyone else at the scene.  Moments before Ms. Cavanaugh was Tasered, she and Officer Davis passed within a few feet of each other as she made a beeline to her front door. See Aplee. App. Doc. 4 at 24.  She did not act aggressively towards Officer Davis or threaten him.  Her clearly visible hands contained no knife or other weapon, and Officer Davis followed her at a distance of six feet.  Id. at 24, 25.  The Taser's probes struck Ms. Cavanaugh before she opened the door to her home,

-8-

and before Officer Davis so much as uttered a warning. Id. at 25. Besides Mr. Murphy—who was standing on the driveway to his adjacent home—no bystanders were present outside the home. These facts certainly could lead a reasonable jury to conclude that Ms. Cavanaugh did not pose an immediate threat to Officer Davis or anyone else at the scene.

Third, again relying upon the eyewitness testimony of Mr. Murphy, when the Taser was deployed Ms. Cavanaugh was neither actively resisting nor fleeing arrest. Id. at 24 at 52-53. In fact, a reasonable jury could conclude that Ms. Cavanaugh had no reason to suspect that she was under arrest until after she was Tasered—Officer Davis gave her no verbal commands and she had little reason to believe that the officers were responding to a crime. See Aplee. App. Doc. 4 at 24-25. Further, Ms. Cavanaugh was not told that she was under arrest; therefore, taken in the light most favorable to the Plaintiffs-Appellees, the summary judgment evidence suggests that she was given no opportunity to comply with—or to resist or to flee—Officer Davis's unexpressed determination to make an arrest. Id. "The absence of any warning—or of facts making clear that no warning was necessary—makes the circumstances of this case especially troubling." Casey, 509 F.3d at 1285. Finally, a reasonable jury could easily conclude that when the Taser was deployed Ms. Cavanaugh was not fleeing—she was quickly walking towards her own home, where Officer Davis could easily arrest her if he so desired. Cf. id. at 1282 (noting that a suspect did not flee when

he "made himself easier to capture, not harder").

In sum, given our standard of review, the <u>Graham</u> factors do not justify Officer Davis's use of his Taser.

Of course, Officer Davis acted under tense circumstances, and we recognize that our role is not to second guess on-the-ground decisions with the benefit of 20/20 hindsight. We are also sensitive to the fact that Officer Davis had information that might have made him apprehensive—he had been told that Ms. Cavanaugh had left the house with a knife and that she had been drinking and taking pain medications; and he had previously responded to a call when Ms. Cavanaugh threatened to commit suicide. Aplt. App. 64 at 241-42. Although we view the facts from an officer's vantage point, our inquiry is an objective one and does not focus on his subjective state of mind. <u>See Graham</u>, 490 U.S. at 397 (1989) (noting that the proper question is "whether the officers' actions are 'objectively reasonable' . . . without regard to their underlying intent or motivation."). Rather, we must consider the uncontroverted facts and the other evidence in the in the light most favorable to the Plaintiffs—under that version, the use of force was objectively unreasonable, regardless of the information Officer Davis had previously received. It is not objectively reasonable to ignore specific facts as they develop (which contradict the need for this amount of force), in favor of prior general information about a suspect. Accordingly, Plaintiffs have established under their version of the facts that Officer Davis's use

of force violated the Fourth Amendment.

B.     Clearly Established

Denial of qualified immunity is appropriate if the officer violated law that was "clearly established" at the time of his or her conduct.  See, e.g., Perez v. Ellington, 421 F.3d 1128, 1131 (10th Cir. 2005).  "The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Oftentimes officers are put "on notice" that their actions are unlawful by Supreme Court or Tenth Circuit cases directly on point.  See Cortez, 478 F.3d at 1114-15.  On-point cases are particularly important when the constitutional question involves a balancing test.  See Medina v. Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  However, the qualified immunity analysis involves more than "a scavenger hunt for prior cases with precisely the same facts." See Casey, 509 F.3d at 1284 (citation omitted).  In certain circumstances, law can be "clearly established" even "without a body of relevant case law," Brosseau, 543 U.S. at 199, and "'even in novel factual circumstances.'"  Cortez, 478 F.3d at 1115 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

In this case, we need not engage in the extended inquiry of deciding whether there is a prior case decided at the appropriate level of certainty.  In

-11-

Casey, we faced very similar factual circumstances: a police officer used her Taser against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with the officer's demands. Casey, 509 F.3d at 1281-82. There we held that the officer's actions violated the Fourth Amendment, and that the law was clearly established as of August 25, 2003, the date on which the incident occurred. Id. at 1286, 1279. Of course, we are bound by prior Tenth Circuit precedent. Following Casey's holding that the law was clearly established as of August 25, 2003, it was clearly established on December 8, 2006 that Officer Davis could not use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning. The district court therefore properly denied qualified immunity.

C.    Municipal Liability

"A plaintiff suing a municipality under Section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Oklahoma County Bd. Of County Com'rs, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). The district court found that the Cavanaughs produced sufficient evidence that Woods Cross City's unwritten Taser policy was the moving force behind Officer Davis's actions. See Aplt.

App. 28.  The Defendants-Appellants do not challenge this conclusion on appeal, arguing only that no constitutional violation occurred.  <u>See</u> Aplt. Br. at 25. Because we decide otherwise, Woods Cross City may be liable for Officer Davis's actions.  The district court's denial of summary judgment was therefore appropriate.

AFFIRMED.