**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LARA ROOSEVELT-HENNIX,

Plaintiff-Appellee,

v.

OFFICER SHANE PRICKETT, in his individual and official capacities,

Defendant-Appellant,

and

THE CITY OF FLORENCE, a municipal corporation; OFFICER JAMES BARR, in his individual and official capacities,

Defendants.

No. 12-1307

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:11-CV-00353-RPM)**

---

Eric M. Ziporin (Sarah E. McCutcheon with him on the briefs), Senter Goldfarb & Rice, L.L.C. Denver, Colorado, for Defendant-Appellant.

Kim Welch, William Muhr Law Firm, Colorado Springs, Colorado (L. Dan Rector, Rector Law Firm, Colorado Springs, Colorado, on the brief), for Plaintiff-Appellee.

---

Before **LUCERO**, **MURPHY**, and **MATHESON**, Circuit Judges.

**MURPHY**, Circuit Judge.

# I. INTRODUCTION

Officer Shane Prickett of the Florence City Police Department used a Taser on Lara Roosevelt-Hennix while Roosevelt-Hennix's hands were cuffed behind her back and she was seated in the back seat of a police car. Roosevelt-Hennix brought suit pursuant to 42 U.S.C. § 1983, alleging Prickett subjected her to excessive force in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 388, 395 (1989) (holding the Fourth Amendment "governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person").[1] Prickett argued he was entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (holding a defendant officer is immune from suit

---

[1]The question whether a particular application of force violates the Fourth Amendment is one of reasonableness. *Graham v. Connor*, 490 U.S. 386, 388, 396-97 (1989). In determining whether the use of force is reasonable, a court must pay "careful attention to the facts and circumstances of each particular case." *Id.* at 396. We focus on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* As set out more fully below, it is unnecessary to apply the *Graham* standard because Prickett has not asserted an entitlement to qualified immunity under the set of facts this court must assume in resolving this appeal.

asserting excessive force unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). The district court denied qualified immunity in an brief oral ruling at the conclusion of the hearing on Prickett's summary judgment motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

Orders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291. *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013). This court does, however, have interlocutory jurisdiction over a subset of appeals from the denial of qualified immunity at the summary judgment stage. *Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008). Whether a ruling falls within, or outside, that subset depends on the nature of the appeal. To the extent an appeal turns on an abstract issue of law, we have jurisdiction to review a denial of qualified immunity. *Allstate Sweeping*, 706 F.3d at 1266-67. That is, this court has jurisdiction to review "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." *Id.* at 1267 (quotation omitted). In contrast, this court has no interlocutory jurisdiction to review "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995). "[T]he Supreme Court [has] indicated that, at the summary judgment stage at

-3-

least, it is generally the district court's exclusive job to determine which *facts* a jury could reasonably find from the evidence presented to it by the litigants." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010). "So, for example, if a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, the Supreme Court has indicated we usually must take them as true—and do so even if our own *de novo* review of the record might suggest otherwise as a matter of law." *Id.*

As the Supreme Court has recognized, however, it will not always be easy "to separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is 'genuine')." *Johnson*, 515 U.S. at 319. This is particularly true when district courts "deny summary judgment motions without indicating their reasons for doing so." *Id.* In denying Prickett qualified immunity, the district court simply stated as follows: "I am denying the motion for summary judgment as to Prickett . . . because it is . . . disputed factually as to the need for the use of a taser device under all these circumstances. And . . . this is quintessentially a jury matter."[2] In light of the district court's failure to set out which set of facts it

_____

[2]The district court's order denying Prickett's motion to amend the judgment does not provide any clarification. It simply states as follows:

There is clearly established law that a police officer violates the Fourth Amendment when he uses excessive force against a person in
(continued...)

-4-

assumed when it denied summary judgment,[3] Prickett's brief on appeal sets out a

version of the encounter and asserts he is entitled to qualified immunity given that

factual background.[4]  For her part, Roosevelt-Hennix sets out a materially

different version of the facts and argues, given that set of facts, the district court

[2](...continued)
his custody and the test is what a reasonable officer would do under
the same circumstances.  In this case, there is a factual dispute
concerning the conduct of the plaintiff and the reasonableness of the
use of force against her, including the use of the Taser device.

We do not read either the district court's oral ruling or its written order as
standing for the proposition that the reasonableness of Prickett's actions is
invariably a fact question for the jury.  As this court has made clear, "the question
of objective reasonableness is *not* for the jury to decide where the facts are
uncontroverted." *Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007).  It is
only when objective reasonableness turns on unresolved factual disputes that
reasonableness is submitted to the jury. *Id.*  We read the district court's
statements as consistent with the rule set out in *Mecham*.

[3]*But cf. Johnson v. Jones*, 515 U.S. 304, 319 (1995) ("When faced with an
argument that the district court mistakenly identified clearly established law, the
court of appeals can simply take, as given, the facts that the district court assumed
when it denied summary judgment for that (purely legal) reason.  Knowing that
this is extremely helpful to a reviewing court, district courts presumably will
often state those facts." (quotation and citation omitted)).

[4]Prickett's brief nominally recognizes that on appeal from the denial of
summary judgment, this court must view the facts in the light most favorable to
Roosevelt-Hennix. *See Blossom v. Yarbrough*, 429 F.3d 963, 966 (10th Cir.
2005).  Nevertheless, as detailed below, he asserts two factual predicates
underpinning Roosevelt-Hennix's claim are "blatantly contradicted" by the
record. *Cf. Blackwell v. Strain*, 496 F. App'x 836, 845 (10th Cir. 2012)
(unpublished) ("Where . . . the version of events the district court holds a
reasonable jury could credit is blatantly contradicted by the record, we may assess
the case based on our own de novo view of which facts a reasonable jury could
accept as true." (quotations omitted)).  Thus, Prickett asks this court to review the
district court's denial of qualified immunity without regard to those key facts.

correctly denied Prickett's assertion of qualified immunity. Given this unfortunate state of affairs, this court has no alternative other than "to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to [Roosevelt-Hennix], likely assumed." *Id.*; *see also Lewis*, 604 F.3d at 1225 ("[W]hen the district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record de novo to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make."). That cumbersome review demonstrates a factual milieu at odds with Prickett's version.

With two notable exceptions, the facts leading up to Prickett's use of a taser on Roosevelt-Hennix are largely undisputed. Those facts, stated in the manner most favorable to Roosevelt-Hennix, are as follows. Prickett and James Barr are officers of the Florence City Police Department. Barr initiated a traffic stop when he observed Roosevelt-Hennix's vehicle exceeding the speed limit. Roosevelt-Hennix pulled her vehicle off the road and into a grocery store parking lot. Barr pulled his patrol car in behind Roosevelt-Hennix's vehicle, approached Roosevelt-Hennix, and explained the reason for the stop. At this point, Barr observed the following: (1) accompanying Roosevelt-Hennix in the vehicle were an adult male and Roosevelt-Hennix's young daughter; (2) an odor of alcohol was emanating from the vehicle; and (3) Roosevelt-Hennix appeared to have been

-6-

drinking.  When Barr asked Roosevelt-Hennix how much alcohol she had consumed, she admitted consuming two or three drinks.

At Barr's request, Roosevelt-Hennix agreed to step out of her vehicle and perform standard roadside sobriety tests.  Barr conducted the horizontal gaze nystagmus test, which indicated Roosevelt-Hennix might be intoxicated.  Barr also began to instruct Roosevelt-Hennix through additional tests, but stopped when Roosevelt-Hennix indicated a back injury prevented her from performing some physical tasks.  At that point, Barr handcuffed Roosevelt-Hennix's arms behind her back and placed her under arrest for DUI.  Although she was angry Barr ignored her request to employ the handcuffs outside her daughter's line of sight, Roosevelt-Hennix voluntarily presented her hands for cuffing.  Barr placed Roosevelt-Hennix in the back seat of a patrol vehicle and closed the door.  Barr testified Roosevelt-Hennix was compliant as he placed her in the patrol vehicle.  Although the exact timing of his arrival is less than clear, Roosevelt-Hennix testified Prickett arrived on the scene by the time Barr placed her in the patrol car.

Roosevelt-Hennix began to panic after Barr placed her in the police car.  She testified as follows: "I'm claustrophobic, and with the windows up, doors locked, hands behind my back handcuffed, and I didn't know what was going on with my daughter . . . ."  She yelled at the officers to return to the patrol vehicle and tell her what was going on with her daughter, but Barr and Prickett initially

ignored her request. During this outburst, Roosevelt-Hennix banged her head against the window of the patrol vehicle to try and get the officers' attention.[5] Prickett returned to the patrol vehicle and opened the door. According to Roosevelt-Hennix, she asked Prickett if "one of [the officers] could stand by the car with [her] so that the door [could] remain open so [she would not] go into a full panic because of being in a confined space." Prickett refused her request and told Roosevelt-Hennix to calm down and stop banging her head against the window.

Prickett determined Roosevelt-Hennix should be "hobbled"[6] prior to transport to the police department. Prickett opened the patrol vehicle's rear door and ordered Roosevelt-Hennix to place her feet outside the vehicle. It is at this

---

[5]At this point in the sequence of events, the parties' versions of events begin to diverge. In particular, under the set of facts posited by Prickett, Roosevelt-Hennix not only banged her head against the window of the patrol car more than once, but also thrashed about, kicking the interior of the vehicle. Prickett appropriately recognizes, however, that at the summary judgment stage, this court must assume the set of facts testified to by Roosevelt-Hennix, at least as to these particular factual disputes. *See* supra n.4.

[6]In both his deposition and post-arrest Offense Case Report, Prickett referred to the device at issue as a "leg hobble." Although the record makes clear a hobble is some type of leg restraint, nothing in the record indicates whether the device at issue here is a simple strap used to tie the legs together or, instead, a more complex device used in conjunction with handcuffs. *Compare* Webster's Third New International Dictionary 1075 (1993) (defining a "hobble" as "[s]omething used for tying the legs (as of a horse) esp. to prevent straying"), *with Sallenger v. City of Springfield*, 630 F.3d 499, 500 (7th Cir. 2010) ("'[H]obble'—essentially a cord that is looped around a suspect's lower legs and then connected to a strap that is attached to handcuffs.").

critical point that the parties' different versions of the events become irreconcilable. In his opening brief, Prickett asserts his use of the taser was precipitated by Roosevelt-Hennix's refusal to comply with his order. In particular, Prickett asserts Barr attempted to physically remove Roosevelt-Hennix's feet from the patrol car, but was unable to do so because Roosevelt-Hennix wedged her feet underneath the cage partition separating the front seat from the back seat. Accordingly, Prickett contends that in analyzing his claim for qualified immunity, this court must view Roosevelt-Hennix's excessive force claim through the lens of an individual actively resisting a lawful police order. In her brief, on the other hand, Roosevelt-Hennix asserts she told the officers a preexisting back injury left her unable to lift herself and turn her body to place her feet outside the vehicle. Furthermore, she specifically asserts that "the two officers never attempted to lift [her] legs to obtain compliance." Appellee Br. at 14. Roosevelt-Hennix argues that under this set of facts, the one this court must assume for purposes of review of a summary-judgment based denial of qualified immunity, Prickett's use of the taser violated her clearly established right to be free from excessive force.

Prickett contends that both of the key factual assertions underpinning Roosevelt-Hennix's appellate arguments[7] are blatantly contradicted by the

---

[7]That is, Roosevelt-Hennix's assertions that she informed the officers she
(continued...)

record.[8]  According to Prickett, Roosevelt-Hennix admitted during her deposition

that the officers attempted to physically manipulate her legs and remove them

---

[7](...continued)
was physically unable to comply with the request to move her feet out of the patrol vehicle and the officers never attempted to reposition her in the vehicle before Prickett employed the taser.

[8]Given the district court's failure to "identify the particular charged conduct that it deemed adequately supported by the record," this court has no choice but to "look behind the order denying summary judgment and review the entire record de novo to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010).  For that reason, there is no need for Prickett to resort to the blatantly-contradicted-by-the-record exception to the jurisdictional rule set out in *Johnson*.  *See* 515 U.S. at 320.  As *Lewis* makes clear, both the failure-to-identify and blatantly-contradicted-by-the-record exceptions allow this court to conduct a de novo review of the record to determine which factual inferences a jury could and could not make:

> *Johnson*'s rule has attracted exceptions that we must also consider
> . . . .
>
> First, the Court has indicated that, when the district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record de novo to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make. *See Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996); *see also Johnson*, 515 U.S. at 319 (If a district court does not state the facts a reasonable jury could find at summary judgment, "a court of appeals may have to undertake a cumbersome review of the record to determine [those] facts.").  Second, when the "version of events" the district court holds a reasonable jury could credit "is blatantly contradicted by the record," we may assess the case based on our own de novo view of which facts a reasonable jury could accept as true. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

*Lewis*, 604 F.3d at 1225-26.

-10-

from the vehicle before employing the taser. Prickett also asserts the record conclusively demonstrates Roosevelt-Hennix never told the officers she was unable to move her feet because of a medical condition. In support of this assertion, Prickett points to two pieces of evidence in the record: (1) an audio recording of a portion of the encounter; and (2) Roosevelt-Hennix's deposition testimony.

In any event, Prickett placed the taser against Roosevelt-Hennix's thigh and activated it in drive stun mode.[9] After Prickett employed the taser, Barr removed Roosevelt-Hennix's legs from the patrol car and placed them in restraints. Immediately thereafter, Roosevelt-Hennix advised Barr she could not feel her legs. Barr contacted dispatch and requested that medical personnel meet him at the police department to evaluate Roosevelt-Hennix. Medical personnel met Barr and Roosevelt-Hennix at the police department and then transported her to the hospital. The next day, Roosevelt-Hennix underwent back surgery for paralysis in her lower extremities.

---

[9]When a taser is used in drive stun mode, the operator removes the dart or probe cartridge and pushes two electrode contacts located on the front of the taser directly against the suspect. *See Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011). In this mode, the taser delivers an electric shock, but does not cause an override of an individual's central nervous system as does a taser in dart or probe mode. *Id.*

## III. DISCUSSION

As should be apparent from the discussion set out above, the resolution of this appeal turns entirely on questions of evidentiary sufficiency. Put simply, Prickett's arguments as to both prongs of the qualified immunity analysis—the existence of a constitutional violation that is clearly established—depend entirely on the assertion Roosevelt-Hennix actively resisted the officers' proper attempts to place her in leg restraints. Accordingly, as required by *Lewis*, this court turns to the record to determine whether it contains sufficient evidence from which a reasonable juror could find: (1) Roosevelt-Hennix informed the officers she was physically incapable of complying with the request to place her feet outside the patrol vehicle for hobbling; and (2) the officers did not attempt to aid her in moving her feet outside the patrol vehicle before applying the taser. *See Lewis*, 604 F.3d at 1225.

This court first addresses Prickett's assertion Roosevelt-Hennix confirmed during her deposition "that the officers attempted to physically manipulate her legs and remove them [from] the vehicle—prior to the use of the TASER." Reply Br. at 10. In support of this assertion, Prickett points to a portion of Roosevelt-Hennix's deposition attached to his motion for summary judgment. The portion of the deposition attached to Prickett's summary judgment motion, however, omits a key part of the exchange. The entire relevant portion of the deposition is

-12-

attached to Roosevelt-Hennix's memorandum in opposition to summary judgment.

Roosevelt-Hennix testified as follows:

> Q. Isn't it true that Officer Barr at one point reached his hands into the car to grab your feet to pull your feet out, and you prevented him from doing that ?
>
> A. I don't remember preventing him from doing that. I do remember them grabbing my leg right before I was Tased.[10]
>
> Q. And
>
> A. That's all I knew, I was being Tased.
>
> Q. And did they tell you, we need to get your feet and get them out of the car?
>
> A. I remember them asking me to put my legs out of the car, but I don't remember why. I don't remember them telling me why.
>
> Q. Do you remember keeping your feet still and locking them and preventing them from getting your feet out of the car?
>
> A. Not locking. I couldn't lift myself and turn. They grabbed me and pulled me.
>
> Q. But they weren't able to do that, correct?
>
> A. They were able to do that.
>
> Q. They were able to?
>
> A. They grabbed my leg and pulled it. That's when they Tased me.

---

[10]Barr testified that he grabbed Roosevelt-Hennix's legs while Prickett applied the taser. Furthermore, on the audio recording of the incident, Prickett can be heard instructing Barr to take the following action: "Grab her, grab her ankles . . . and when I hit the Taser you pull 'em out . . . ok."

Q. Let me make sure you and I are on the same page. I asked you if at some point an officer reached in and grabbed your feet to pull your legs out of the car, correct?

A. Yes.

Q. And you recall that happening?

A. I remember my leg being grabbed.

Q. You don't remember why they were doing it, but you recall that it happened?

A. Yes.

Q. And the police report indicates that Officer Barr grabbed your feet and tried to pull your feet out of the car, but that you prevented him from doing that?

A. No.

Q. You dispute that?

A. Yes.

Q. And is it your testimony that before you were Tased, the officers were actually able to grab your feet, turn you, and place your feet outside the patrol car?

A. I don't remember them grabbing me and turning me. I remember them grabbing my leg and Tasing me.

Q. And so the Tasing occurred before your feet were outside of the vehicle right?

A. Yes.

As should be abundantly clear, at no point in this deposition testimony did

Roosevelt-Hennix admit the police attempted to manipulate her legs and remove

-14-

them from the patrol car prior to application of the taser. Prickett's contrary assertion is meritless.[11] More importantly, a reasonable juror could find—based on Roosevelt-Hennix's testimony, Barr's testimony, and the audio recording of the incident—that the officers never attempted to aid Roosevelt-Hennix in removing her feet from the vehicle prior to application of the taser. That being the case, the first key factual averment underpinning Prickett's appeal cannot be reconciled with the record.

Drawing all reasonable inferences in Roosevelt-Hennix's favor, this court likewise concludes a reasonable juror could find Roosevelt-Hennix informed the officers she was physically unable to comply with the request to remove her feet from the patrol car for hobbling. As set out above, both Barr and Roosevelt-Hennix testified Roosevelt-Hennix stated more than once during the DUI screening that a back injury prevented her from completing some of the physical tasks. Furthermore, Roosevelt-Hennix testified she told the officers she could not comply with the request to remove her feet from the patrol car because she could not "move like that."[12] Thus, Prickett is simply incorrect to assert the record is

_____

[11]Counsel are reminded of the duty of candor to the court. *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1093 n.13 (10th Cir. 2001). Factual contentions made on appeal should be supported in the record. *See* 10th Cir. R. 46.5(B)(3). Counsel has failed to meet these important obligations.

[12]Prickett makes much of Roosevelt-Hennix's failure to directly testify she told officers she was medically incapable of complying with the command. Given

(continued...)

devoid of support for the two key factual propositions supporting Roosevelt-Hennix's excessive force claim.[13]

Having rejected, as at odds with the record, the factual underpinnings of Prickett's appeal, we take this opportunity to urge district courts to heed *Johnson*'s admonition to state the facts the court is assuming for purposes of resolving a summary-judgment based request for qualified immunity. 515 U.S. at 319. Such a consistent course of action preserves the district courts's institutional advantage, at this interlocutory stage, in determining "the existence, or nonexistence, of a triable issue of fact." *Id.* at 316. It will also help prevent the waste of judicial resources, as the Supreme Court has made clear evidentiary sufficiency appeals simply do not advance the purposes of qualified immunity. *Id.* (noting that interlocutory appeals involving evidentiary sufficiency "are less likely to bring important error-correcting benefits"). The caveat here, of course,

_____

[12](...continued)
that it is uncontested Roosevelt-Hennix previously informed Barr of her medical issue, a jury could reasonably infer her statement of the reason for her inability to move her feet was consistent with her earlier warnings.

[13]Prickett further asserts that Roosevelt-Hennix's deposition testimony is directly contradicted by the audio/video recording of the incident. In particular, he asserts the audio recording does not reveal her informing the officers of her inability to comply with their request. This absence in the audio recording is hardly remarkable. The recording is exceedingly brief and Prickett testified the camera only operated when the taser was turned on. It cannot legitimately be contended the recording captured the entirety of the encounter. Correspondingly, it cannot legitimately be posited the audio recording blatantly contradicts Roosevelt-Hennix's testimony she informed the officers she was physically incapable of complying with their request to move her feet outside the car.

is that Prickett's appellate brief makes clear he would have brought this appeal under the blatantly-contradicted exception to *Johnson* even if the district court had set out the facts it assumed for purposes of resolving Prickett's summary judgment motion. For that reason, we emphasize that the exception means what it says. Litigants should be cognizant of the limited nature of the exception, and of their duty of candor to this court, before bringing such an appeal.

## IV. CONCLUSION

This court's de novo review of the record reveals sufficient evidence for a jury to conclude Roosevelt-Hennix informed the officers she was physically unable to comply with their request to move her feet outside the patrol vehicle. It likewise contains sufficient evidence for a jury to conclude the officers never attempted to aid Roosevelt-Hennix in moving her feet before applying the taser. Unsurprisingly, Prickett does not assert an entitlement to qualified immunity under that version of the facts. Accordingly, the order of the district court denying Prickett's motion for summary judgment is hereby **affirmed**.