LUCERO, Circuit Judge.
*1147 Ryan Lee sued four Douglas County Sheriff's Deputies, pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment rights. The defendants moved for summary judgment, arguing that Lee's rights were not violated, and even if his rights were violated, that they were entitled to qualified immunity. The district court granted the defendants' motion in part and denied it in part, concluding that there was "a genuine issue of material fact as to whether excessive force was used" and that the defendants were not entitled to qualified immunity. Defendants now appeal from the denial of qualified immunity.
We lack interlocutory appellate jurisdiction to review the district court's determination of evidentiary sufficiency at the summary judgment stage. Ralston v. Cannon, 884 F.3d 1060, 1062 (10th Cir. 2018). As to the purely legal challenge defendants raise on appeal, we conclude that the district court correctly held that-based on the relevant version of the facts-the defendants used excessive force and did so in violation of clearly established law. We accordingly dismiss the appeal as to the factual challenges, and exercising jurisdiction under 28 U.S.C. § 1291, we otherwise affirm the district court's order.
I
On July 4, 2014, Lee and his wife, Tamila Lee, attended a barbecue where they consumed alcohol. After the couple returned home, an altercation broke out over a set of car keys. Tamila, in an attempt to keep her husband from driving, blocked him from exiting their home, and a physical struggle ensued. She called 911 and informed the operator that her husband had been drinking and they had been fighting. Lee then took the phone from her and told the operator that nothing was happening and that Tamila regularly physically abuses him. Defendants, all of whom are employed by the Douglas County Sheriff's Office, were promptly dispatched to the Lees' home.
Mark O'Harold and Todd Tucker arrived first and entered the home with Tamila's consent. Lee asked to see a warrant, and one of the deputies responded: "What are you, some kind of lawyer or something?" Lee responded, "No, but you don't look like a lawyer either, you look like a dumbass." Shortly afterward, Deputies Amanda Weiss and Chad Walker also arrived at the Lees' home and separated the Lees for questioning. Lee was largely uncooperative. Tamila reported that the couple had been arguing over car keys, that Lee was intoxicated, that he had previously been arrested for driving under the influence, and that he had pinned her to the ground and shoved her.
After gathering information from both spouses, O'Harold and Weiss stepped outside to discuss what they had learned, while Tucker remained in the living room with Lee, and Walker remained in the bedroom with Tamila. While O'Harold and Weiss were outside, Lee swore at Tucker *1148 again, stood up from the sofa and moved toward the kitchen. The parties dispute whether Lee announced that he intended to get a glass of water, whether he had been arrested or detained at this point, and whether Tucker ordered him to stay seated or move away from the kitchen due to the perceived risk of harm present from the knives in the kitchen.
As Lee nonetheless moved toward the kitchen, Tucker attempted to detain him, and another struggle broke out. O'Harold and Weiss, hearing a commotion, reentered the home. O'Harold applied an arm bar hold to Lee. Lee collided with the kitchen cabinets and refrigerator, and Weiss then struck him twice in the shoulder in an effort to force him to let go of the refrigerator. O'Harold also struck Lee twice in the neck. Tucker drew his Taser and applied it three to five times to Lee's back, with each application lasting approximately three, five, and eight seconds respectively. Lee then lost consciousness. Throughout the incident, Walker observed but did not intervene. Weiss then handcuffed Lee and escorted him to Weiss' squad car. Lee subsequently pled guilty to violating Colo. Rev. Stat. § 18-9-111(1)(a), a misdemeanor domestic violence crime.
Following these events, Lee filed suit, alleging First Amendment retaliation and excessive force. Defendants moved for summary judgment on the basis of qualified immunity. The district court granted the motion as to Lee's First Amendment retaliation claim and the portion of his excessive force claim based on handcuffing, but denied it as to the remainder of his excessive force claim. The district court concluded that the facts remaining in dispute, when viewed in the light most favorable to Lee, precluded a grant of qualified immunity. Defendants now appeal.
II
On appeal, defendants argue that the district court erred, both in finding a violation of a constitutional right and in concluding that the law was clearly established at the time they acted. See Mick v. Brewer, 76 F.3d 1127 (10th Cir. 1996) (to overcome qualified immunity, a plaintiff must show: "(1) that the defendant's actions violated a constitutional or statutory right, and (2) that the right allegedly violated was clearly established at the time of the conduct at issue" (quotation and alteration omitted)). As to the first prong, they argue that the district court erred in its application of the test from Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), to determine whether the force the deputies used was excessive. In assessing whether force was reasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396, 109 S.Ct. 1865. In particular, the defendants argue that the district court erred in concluding that the offense for which Lee was arrested was relatively minor, that Lee did not pose an immediate threat to the safety of the deputies or others, and that he did not actively resist arrest or attempt to flee.
Denial of summary judgment is generally not immediately appealable. Roosevelt-Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013). However, we possess jurisdiction "over a subset of appeals from the denial of qualified immunity at the summary judgment stage." Id. We have jurisdiction "to review (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." Id. We do not have *1149 jurisdiction to consider whether "the pretrial record sets forth a genuine issue of fact for trial." Id. Instead, we generally must accept the facts specified by the district court "even if our own de novo review of the record might suggest otherwise as a matter of law." Id. (italics omitted).
Under these standards, we lack jurisdiction to review the defendants' arguments, adopted by the dissent, that Lee posed an immediate threat and that he actively resisted arrest or attempted to flee. In this case, the district court "conclude[d] that these disputed facts are indeed material, and it is for the jury to decide whether Mr. Lee resisted." Consideration of challenges to this conclusion would "require [us to] second-guess[ ] the district court's determinations of evidence sufficiency" and would accordingly exceed our interlocutory jurisdiction. Henderson v. Glanz, 813 F.3d 938, 948 (10th Cir. 2015). We therefore dismiss the appeal as to these issues.
III
We do, however, have jurisdiction to review whether the facts as the district court found them would constitute a legal violation. Roosevelt-Hennix, 717 F.3d at 753. Accordingly, we consider the defendants' argument that the district court erred in concluding that the first Graham factor-the severity of the crime at issue-weighed in Lee's favor. We review the district court's qualified immunity determination at the summary judgment stage de novo. Mick, 76 F.3d at 1134.
The district court concluded that, because the deputies responded to a call regarding a potential misdemeanor, "the amount of force should be reduced accordingly." Although the court explicitly noted that it did not intend to "diminish[ ] the seriousness of domestic violence," the defendants argue that the court essentially did so. We disagree. The district court's analysis was consistent with the many cases in which we have held that the first Graham factor may weigh against the use of significant force if the crime at issue is a misdemeanor. See, e.g., Morris v. Noe, 672 F.3d 1185, 1195 (10th Cir. 2012) ; Koch v. City of Del City, 660 F.3d 1228, 1247 (10th Cir. 2011) ; Fogarty v. Gallegos, 523 F.3d 1147, 1160 (10th Cir. 2008).
We decline to hold, as the defendants would have us do, that all calls to police involving allegations of domestic violence entitle officers to respond with substantial force. Given that the defendants' remaining challenges to the district court's application of Graham amount to factual challenges over which we have no jurisdiction, we must accept the district court's ruling that a jury could find that Lee did not pose an immediate threat and was not attempting to evade arrest. Under these circumstances, the fact that the crime at issue involves domestic violence does not entitle the arresting officers to use significant force. See Cavanaugh v. Woods Cross City, 625 F.3d 661, 667 (10th Cir. 2010). We therefore hold that the district court did not err in concluding that Lee established a violation of a constitutional right.
Defendants also argue that, even if Lee's constitutional rights were violated, those rights were not clearly established. The district court relied on three cases in rejecting this argument: Perea v. Baca, 817 F.3d 1198 (10th Cir. 2016), Cavanaugh, and Casey v. City of Federal Heights, 509 F.3d 1278 (10th Cir. 2007). We conclude that Cavanaugh was sufficiently analogous to the scenario at issue in this case. In that case, a man called police for help finding his wife, who had stormed off after a fight. 625 F.3d at 662-63. He told officers that she had been drinking, had taken pain medication, attempted to put him in a closet during their fight, and left home with a kitchen knife. Id. at 663. An officer quickly found her outside the home. Id. Although *1150 he could see that her hands were empty, he drew his Taser and discharged it into her back without warning. Id. We concluded the law was clearly established that an officer may not use a "Taser against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with the officer's demands." Id. at 667.[1]
Although defendants attempt to distinguish Cavanaugh from this case, their efforts amount to further impermissible challenges to the district court's factual recitation. For example, defendants seek to distinguish Cavanaugh by arguing that the officers told Lee not to enter the kitchen. However, the district court concluded that Lee sufficiently established the defendants never advised Lee that he was being detained and was not free to move about the house.[2] Defendants further assert that, unlike in Cavanaugh, the violence in this case "was ongoing when the deputies arrived." This assertion is also unsupported by the district court's evidentiary conclusions, which are beyond our jurisdiction to review. Finally, the defendants argue that Cavanaugh's facts are meaningfully different from those in this case, because in that case "there was no perceived danger that the officer was trying to prevent." In contrast, in this case, Lee was approaching the kitchen, where knives were stored. In Cavanaugh, however, the officer subjectively believed that the woman was armed with a knife, even if it was not in her hands at the time he found her.
Cavanaugh establishes that the use of a Taser without warning on a non-resisting misdemeanant violates the Fourth Amendment's excessive force protections. Under the facts articulated by the district court, defendants violated Cavanaugh's dictate by repeatedly applying a Taser without warning, despite the fact that Lee was not resisting the officers and had not been advised that he was being detained. Although defendants seek to argue that Lee was in fact resisting their efforts to arrest him, we have no jurisdiction to review the district court's evidentiary conclusions.
IV
For the foregoing reasons, we DISMISS the appeal as to factual challenges, and otherwise AFFIRM the district court's order.

The warning about the imminent use of force issued by the officers and subsequent opportunity for the misdemeanant to comply distinguish Aldaba v. Pickens, 844 F.3d 870 (10th Cir. 2016), upon which the dissent relies, from Cavanaugh and this case. In Aldaba, officers "repeatedly ordered [the individual] to calm down and get on his knees, but [he] refused, even after several warnings about using a Taser." 844 F.3d at 876. But as recognized in Cavanaugh and controlling in this case, the law is "clearly established" that an officer cannot "use his Taser on a nonviolent misdemeanant who did not pose a threat and was not resisting or evading arrest without first giving a warning." 625 F.3d at 667 (emphasis added).

The dissent emphasizes the district court's statement that Tucker told Lee not to enter the kitchen. (See Dissenting Op. 1155-56.) However, the district court found a material dispute as to whether Lee had been detained at the time he walked toward the kitchen. As the district court noted, Tucker testified that Lee was not detained at that time. The district court's finding therefore refutes any suggestion that Lee's actions evinced an attempt to evade or resist arrest. See United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996) (providing the "correct test" to establish detention "is whether a reasonable person in [the detained individual's] position would believe he was not free to leave"). Further, Tucker's order that Lee should stay out of the kitchen does not shield defendants from clearly established law that requires a warning prior to the use of force under circumstances involving a "nonviolent misdemeanant who [does not] pose a threat and [is not] resisting or evading arrest." Cavanaugh, 625 F.3d at 667.