**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 29, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TIMOTHY C. HARRIS,

 Plaintiff - Appellee,

v.

CHRISTOPHER JANES,

 Defendant - Appellant,

and

CITY OF TOPEKA, KANSAS,

 Defendant.

No. 19-3191
(D.C. No. 5:18-CV-04124-SAC-TJJ)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

Christopher Janes, a City of Topeka police officer, appeals from a district

court order denying him qualified immunity in Timothy Harris' excessive-force

lawsuit. We dismiss the appeal for lack of jurisdiction.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

This appeal stems from Officer Janes' stop and arrest of Harris in January 2018.[1] Janes spotted Harris' car parked the wrong direction on a street and proceeded to detain Harris for (1) an outstanding probation-violation warrant and (2) reports of his wrongful possession of his girlfriend's belongings. As Janes tried to handcuff him, Harris repeatedly turned around and tried to address Janes. But after being handcuffed, Harris stopped resisting and cooperated with Janes to walk to his patrol car.[2]

At this point, the encounter turned violent. According to Harris, Janes threw him down onto the curb and street. Because Harris was handcuffed, he could not break his fall and landed face-first on the curb, leaving "blood in the street." Janes put his knee on Harris' back. A passenger in Harris' car, Airel Gatewood, exited the vehicle and approached Janes, screaming at Janes to get off of Harris. Janes sprayed Harris with pepper spray and punched him several times. Janes repeatedly ordered Harris not to get up, but Harris protested that he was not trying to get up, that Janes

---

[1] When reviewing a district court's denial of qualified immunity at the summary judgment stage, we generally do not make our own factual determinations but rely instead on the district court's recitation of the facts. See Johnson v. Jones, 515 U.S. 304, 319 (1995). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (quotation and alteration omitted). We therefore draw our review of the facts from the district court's thorough and detailed account, from which it appropriately drew reasonable inferences in the light most favorable to Harris. See Harris v. City of Topeka, No. 18-4124-SAC, 2019 WL 3573582, at *2-4 (D. Kan. Aug. 6, 2019).

[2] At this point, Janes' body camera video turns to the street and provides no useful video, only audio, of the incident.

2

was on top of him, and that he could not breathe. Janes replied that Harris could breathe and that "it's the pepper spray." Harris denies that he was attempting to evade arrest or reach for Janes' utility belt or weapons.

Other officers arrived, secured the scene, and arrested Harris and Gatewood. Harris was charged with disobeying lawful orders, obstruction, battery on a police officer, and illegal parking. He filed a 42 U.S.C. § 1983 lawsuit against Janes and the City of Topeka, alleging that Janes used excessive force. In response, Janes filed a motion for summary judgment, asserting qualified immunity.

Analyzing the excessive-force factors identified in Graham v. Connor, 490 U.S. 386 (1989),[3] the district court determined that Harris had raised a genuine issue of material fact as to whether Janes violated his Fourth Amendment rights. In particular, the court concluded that once Harris was handcuffed and announced he would cooperate in walking with Janes to the patrol car, a reasonable jury could find that Janes should have recognized that Harris did not present an immediate threat to officer safety.[4] The court further concluded that the dangers present before Harris was handcuffed did not justify the use of force after circumstances had changed. Consequently, the court determined that "a reasonable jury could find that [Janes' use of] force violated [Harris'] Fourth Amendment rights."

[3] The Graham factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

[4] The court also determined that the first Graham factor—severity of the crime at issue—supported this conclusion because Harris' probation violation was not severe enough to justify the level of force Janes used.

Regarding the second prong of the qualified-immunity analysis, the district court concluded that Janes' use of force violated clearly established law. The court determined that Tenth Circuit precedent made it clear to any reasonable officer in Janes' position "that an arrestee on a probation violation warrant would have a right not to be tackled to [the] ground, kneed in the back, punched in the face, and pepper-sprayed after he was handcuffed, was cooperating with the officer's request to go to the patrol car, was not physically resisting or attempting to evade the officer, and was not attempting to reach for the officer's belt or weapons." Janes timely appealed.

## II

"We review the district court's denial of summary judgment on qualified immunity grounds de novo, with our review limited to purely legal issues." Quinn v. Young, 780 F.3d 998, 1004 (10th Cir. 2015) (quotation omitted). When a defendant claims qualified immunity, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Id. (quotation and alteration omitted). Because our interlocutory jurisdiction to review a denial of qualified immunity is limited to considering "whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right," Attocknie v. Smith, 798 F.3d 1252, 1256 (10th Cir. 2015) (quotation omitted), the defendant must "be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal" and discuss only legal issues, Henderson v. Glanz, 813 F.3d 938, 948 (10th Cir. 2015) (quotation omitted).

4

Janes raises only fact-based challenges to the district court's denial of qualified immunity. He argues that by "using [Harris'] version of the facts," the district court "impermissibly second-guess[ed] [his] decision to use force to maintain control of . . . Harris." Disputing the district court's finding that Harris was cooperating by walking to the patrol car, Janes offers an alternate factual scenario without reference to the force he employed while Harris was handcuffed. Based on his preferred set of facts, he argues that there is no constitutional violation and that clearly established law would not have given him notice that his conduct violated the Fourth Amendment.

Janes' attempt to recharacterize the facts of this case presents a jurisdictional problem. When reviewing the denial of qualified immunity at the summary judgment stage, we have jurisdiction "to review (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." Roosevelt-Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013) (quotation omitted). "We do not have jurisdiction to consider whether the pretrial record sets forth a genuine issue of fact for trial," as "we generally must accept the facts specified by the district court." Lee v. Tucker, 904 F.3d 1145, 1148-49 (10th Cir. 2018) (quotation omitted). And a district court must "ordinarily accept the plaintiff's version of the facts." A.M. v. Holmes, 830 F.3d 1123, 1136 (10th Cir. 2016) (quotation omitted). "Thus, if on interlocutory appeal from a denial of qualified immunity a defendant-appellant's argument is limited to a discussion of his or her

5

version of the facts and the inferences that can be drawn therefrom and presents only a challenge to the district court's conclusion [that] plaintiffs presented sufficient evidence to survive summary judgment, we lack jurisdiction to consider that argument." Henderson, 813 F.3d at 948 (quotation and alterations omitted).

The district court concluded that a reasonable jury could find that Harris, once handcuffed and walking to the patrol car, did not present an immediate threat and Janes should not have thrown him to the ground, kneed him in the back, punched him, and pepper sprayed him. The court then determined that evidence of those facts was sufficient to preclude summary judgment as to both elements of the qualified-immunity inquiry. This is precisely the type of evidentiary analysis that we lack jurisdiction to address, as it "would require second-guessing the district court's determinations of evidence sufficiency." Cox v. Glanz, 800 F.3d 1231, 1242 (10th Cir. 2015) (quotation omitted); see also Romero v. Story, 672 F.3d 880, 883 (10th Cir. 2012) ("[W]e may review whether the set of facts identified by the district court is sufficient to establish a violation of [a] clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." (quotation omitted)). And Janes provides no argument that the district court's conclusion regarding either prong of the qualified immunity analysis was incorrect based on the facts found by the court.

6

Janes argues that we have jurisdiction to consider his fact-based challenges because the district court erred by not crafting a factual narrative based on his perspective. He is mistaken. The district court considered the totality of the circumstances from a reasonable officer's perspective and analyzed whether Janes' actions were objectively reasonable. See Perea v. Baca, 817 F.3d 1198, 1202 (10th Cir. 2016) ("We evaluate excessive force claims under an objective reasonableness standard, which we judge from the perspective of a reasonable officer on the scene."). Janes disputes the district court's view that the evidence creates triable issues of genuine fact as to whether his force "was objectively unreasonable under Graham." McCowan v. Morales, 945 F.3d 1276, 1284 n.7 (10th Cir. 2019). But Janes' disagreement with the district court's factual narrative neither suffices to show the narrative was flawed nor grants us jurisdiction to craft our own. The district court committed no legal error; rather it correctly viewed the circumstances from the perspective of a reasonable officer. Cf. Pahls v. Thomas, 718 F.3d 1210, 1232 (10th Cir. 2013) (stating that interlocutory appellate jurisdiction is not defeated by a "factual determination [that] is predicated on an erroneous legal conclusion").

Because Janes disputes whether the pretrial record sets forth a genuine issue of fact for trial as to the threat Harris posed and the reasonableness of the force used against him, we lack jurisdiction to consider this interlocutory appeal.

## III

We **DISMISS** Janes' appeal for lack of jurisdiction.

Entered for the Court


Carlos F. Lucero
Circuit Judge