**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RANDY GAMEL-MEDLER,

　　　Plaintiff - Appellee,

v.

TONY ALMAGUER, individually and
in his official capacity as Sheriff of
Blaine County; DAVID
ROBERTSON, individually,

　　　Defendants - Appellants,

and

JONITA PAULS, also known as Jonita
Jacks; JOEL PAULS; RENITA
PAULS; MERADITH NORRIS;
KENNY MEIER; PATSY MEIER,

　　　Defendants.

No. 19-6129
(D.C. No. 5:17-CV-00830-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. INTRODUCTION

Randy Gamel-Medler filed this civil rights suit against, inter alia, Tony Almaguer, Sheriff of Blaine County, Oklahoma, and David Robertson, Blaine County's Undersheriff.[1] Gamel-Medler asserted Defendants, in violation of the Fourteenth Amendment's Equal Protection Clause, denied him police protection based on his sexual orientation and the fact he has an African American son. *See* 42 U.S.C. § 1983. He further asserted Defendants conspired to deny him equal protection of the law. *See id.* § 1985(3). Defendants sought summary judgment on the basis of qualified immunity. After the district court denied their request for qualified immunity and set the case for trial, Defendants brought the instant appeal.

This court **dismisses** Defendants' appeal for lack of appellate jurisdiction. *Ralston v. Cannon*, 884 F.3d 1060, 1066 (10th Cir. 2018) ("As this court has made clear, orders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291. We do, however, have jurisdiction under the collateral order doctrine to review a state official's appeal from the denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves abstract issues of law." (quotation, citation, and

---

[1]Almaguer and Robertson are hereinafter referred to collectively as "Defendants."

alteration omitted)).  Defendants' appellate filings cannot reasonably be read as raising the kind of abstract legal question over which this court has jurisdiction. *See id*.  Instead, Defendants' appellate challenges are limited exclusively to the question whether the district court erred in determining the "pretrial record sets forth a genuine issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995) (quotation omitted).

## II.  BACKGROUND

### A.  Factual Background[2]

Gamel-Medler, a gay man with an African American son, moved to Hitchcock, Oklahoma in September of 2016.  Shortly after his arrival in Hitchcock, Gamel-Medler involved himself in local politics by attending government meetings.  His opinions and comments were controversial and triggered disagreements with Hitchcock residents.  The disagreements were apparently sufficiently heated at times that someone suggested the sheriff's department monitor the meetings, and, on occasion, a deputy did attend.  Despite

---

[2]In setting out the factual background, this court states the facts in the manner consistent with the district court's evidentiary determinations. *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013) (holding that on review from a district court's denial of qualified-immunity based summary judgment, this court has no jurisdiction to review a district court's determinations of evidentiary sufficiency).  Furthermore, given this court's determination that Defendants' appellate challenges are all fact-based and, therefore, this court lacks jurisdiction, it is not necessary to set out the background facts in detail.

these disagreements, in early 2017, Gamel-Medler was selected as Hitchcock's Town Clerk.

In his capacity as Town Clerk, Gamel-Medler received a complaint from a Hitchcock resident contending that Jonita, Joel, and Renita Pauls had placed a trailer home on a public right of way, complicating access to nearby property. When Gamel-Medler went to the location to investigate on May 7, 2017, he had a contentious encounter with the Pauls.[3] A deputy sheriff later arrived, along with Rick Edsall, the mayor of Hitchcock, who had been called by Joel Pauls.[4] Gamel-Medler sought to file a formal complaint against Jonita Pauls, based on her anti-gay and racist comments; neither the deputy present at the time nor Almaguer would accept a formal complaint. Instead, Almaguer told Gamel-Medler the Pauls were exercising their "free speech."

Another incident happened a week later. Gamel-Medler placed a nuisance notice of some sort on property owned by Kenny Meier's mother.[5] In response, Meier replaced the notice with a sign which read: "Hay [sic] you QUEER $500 fine for treaspassing [sic]." Although Gamel-Medler did not see the sign before it

_____

[3]The Pauls are defendants in the underlying lawsuit, but are not parties to this appeal.

[4]Edsall is a defendant in the underlying lawsuit, but is not a party to this appeal.

[5]Meier is a defendant in the underlying lawsuit, but is not a party to this appeal.

was taken down, it was the basis for one of the complaints he sought to file against Meier. The following day Meier confronted Dan Humphreys, a friend of Gamel-Meder's who had been shadowing him as he mowed public rights of way. Apparently believing Humphreys to be Gamel-Medler's husband, Meier asked Humphreys the following: "Are you queer?" Humphreys called 911. Robertson arrived, as did Edsall, and the situation was defused. No police reports were taken at that time. Humphreys's testimony is that he later went to the sheriff's office and completed a complaint form. No written reports about the incident, however, have been found. Gamel-Medler also went to the Sheriff's Office to file a complaint against Meier, but Robertson refused to take the report.

A few days later, Gamel-Medler's home was destroyed by fire. Gamel-Medler presented evidence that, at various times, he had expressed concerns that someone in Hitchcock would try to burn down his house.

## B. Procedural Background

Based on the facts summarized above, Gamel-Medler brought claims against Defendants under both §§ 1983 and 1985(3). In response, Defendants moved for summary judgment on the basis of qualified immunity.

As to Gamel-Medler's § 1983 equal protection claim, Defendants argued the claim failed because he had not come forward with proof (1) he was treated differently than other residents of Hitchcock or, even assuming such differential

-5-

treatment, (2) Defendants' conduct was motivated by a discriminatory purpose.[6]

*See Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988)

(setting out a plaintiff's burden in an equal protection action).  In their motions

for summary judgment, neither Almaguer nor Robertson argued that assuming a

jury could conclude they subjected Gamel-Medler to differential treatment with a

discriminatory purposes they could, nonetheless, not be held liable because the

law is not clearly established.[7]  Nor did Almaguer make such an argument in his

---

[6]Defendants also argued Gamel-Medler's equal protection claim failed because he was not a member of a protected class.  Based on binding Tenth Circuit precedent, the district court rejected this argument.  *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (holding an equal protection claim based on racial animus may be based on association); *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1113-14 (10th Cir. 2008) (holding a plaintiff stated a violation of her right to equal protection when the defendant law enforcement officer "has not asserted, and [this court could not] discern on [the] record, a rational reason to provide less protection to lesbian victims of domestic violence than to heterosexual domestic violence victims").  Defendants do not reassert this issue on appeal.

[7]It is not surprising Defendants did not make such an argument. "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted).  A constitutional right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Id.* (quotation omitted).  Assuming, as specifically determined by the district court, a jury could find Defendants denied Gamel-Medler police protection afforded to other residents of Hitchcock because Gamel-Medler's son is African American, it cannot be argued that a reasonable officer would not be aware such conduct is at odds with the Constitution's guarantee of equal protection.  *See, e.g.*, *Ramirez v. Dep't of Corrs.*, 222 F.3d 1238, 1243-44 (10th Cir. 2000) (agreeing with appellant's concession that "'the general notion that one cannot discriminate on the basis of race or national origin

(continued...)

-6-

reply brief in support of summary judgment.  For his part, Robertson cursorily

asserted as follows in his reply brief in support of summary judgment:

> In light of the specific context of this case and the qualified
> immunity inquiry, Plaintiff cannot show that Defendant Robertson
> violated his clearly established, federal constitutional rights, nor is
> there any published decision of the United States Supreme Court or
> the Tenth Circuit Court of Appeals which would have placed
> Defendant Robertson on notice that his acts or omissions were in
> violation of constitutional rights.

As was true of their request for summary judgment on Gamel-Medler's

equal protection claim, Defendants' summary judgment motions as to his

§ 1985(3) conspiracy claim rested entirely on an asserted lack of evidence.[8]  In

---

[7](...continued)
is undoubtedly clearly established'").  Because Gamel-Medler must prove purposeful (i.e., intentional) discrimination to state a viable claim, the need for a factually symmetrical case to put Defendants on notice their conduct violates the law is reduced.  *See id.*  Thus, absent some set of extenuating facts, none of which were alleged in this case, a general proposition will often be enough to render the legal right clearly established in cases such as the instant case.  *See Brown v. Flowers*, No. 19-7011, 2020 WL 5509683 at *4-5 (10th Cir. Sept. 14, 2020) (discussing this concept at length).

[8]Before the district court, Defendants argued Gamel-Medler's § 1985(3) conspiracy claim could not proceed to the extent it was based on Gamel-Medler's homosexuality.  On appeal, they assert the district court erred in failing to address and grant them summary judgment on this issue.  A close review of the district court's order, however, makes clear that in allowing Gamel-Medler's conspiracy claim to proceed, the district court limited its analysis to racial animus based on the race of Gamel-Medler's son.  In his brief on appeal, Gamel-Medler specifically recognizes and accedes to the district court's implicit ruling that the § 1985(3) claim can only proceed to the extent it is based on Defendants' alleged racial animus.  This being the case, Defendants' challenge to the district court's failure to grant them summary judgment on this portion of Gamel-Medler's

(continued...)

particular, Defendants argued Gamel-Medler (1) lacked evidence they had either conspired with each other or any other defendant and (2) failed to produce evidence of an underlying violation of his right to equal protection. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (holding that to state a valid claim under § 1985(3), a plaintiff must prove "(1) the existence of a conspiracy (2) intended to deny them equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy"). Neither Almaguer nor Robertson asserted, in either their motions for summary judgment or their replies in support thereof, that their conduct was reasonable even assuming a jury could find the existence of a conspiracy that led to a deprivation of Gamel-Medler's right to equal protection. *Cf. Bisbee v. Bey*, 39 F.3d 1096, 1101-02 (10th Cir. 1994) (holding the doctrine of qualified immunity is available to public officials in actions brought pursuant to § 1985(3)).

The district court denied Defendants' motions for summary judgment. As to Gamel-Medler's § 1983 equal protection claim, the district court concluded Gamel-Medler adduced sufficient evidence for a reasonable jury to conclude (1) "he was treated differently from other persons similarly situated" and (2) "all the

_____

[8](...continued)
conspiracy claim does not present a justiciable controversy.

-8-

circumstantial evidence in the case is sufficient to create a justiciable question as to whether these defendants declined to take and pursue plaintiff's complaints due to discriminatory animus." Dist. Ct. Ord. at 6, 7. Although not adequately challenged by Defendants, the district court also concluded the law was clearly established that purposeful discriminatory denial of police protection violates the Constitution, whether the animating discriminatory purpose was based on Gamel-Medler's homosexuality or the race of Gamel-Medler's son. *Id.* at 8-9 (relying on *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) and *Price-Cornelison v. Brooks*, 524 F.3d 1103 (10th Cir. 2008)). As to Gamel-Medler's § 1985(3) claim, the district court noted that in denying Defendants summary judgment on Gamel-Medler's equal protection claim, it had already concluded a jury could find Defendants violated Gamel-Medler's right to equal protection. Dist. Ct. Ord. at 13. The district court also determined that a reasonable jury could conclude Defendants conspired with each other to deprive Gamel-Medler of his right to equal protection. *Id.* at 13-14. Given that neither Defendant raised the issue of clearly established law in his district court filings, the district court did not address the issue in its order denying Defendants' request for summary judgment as to Gamel-Medler's § 1985(3) conspiracy claim.

### III. ANALYSIS

Defendants assert the district court erred when it denied their motions for qualified-immunity based summary judgment. Their arguments, however, implicate only the district court's determinations of evidentiary sufficiency and, therefore, do not fall within the parameters of this court's collateral-order jurisdiction.

This court has synthesized the jurisdictional parameters of an appeal from the denial of qualified immunity as follows:

> As this court has made clear, "[o]rders denying summary judgment are ordinarily not appealable final orders for purposes of 28 U.S.C. § 1291." *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013). We do, however, have jurisdiction under the collateral order doctrine to review a state official's appeal from the denial of qualified immunity at the summary judgment stage, but only to the extent the appeal involves abstract issues of law. *Id.*; *see also Fancher v. Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013); *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266-67 (10th Cir. 2013).
>
> > That is, this court has jurisdiction to review (1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation. In contrast, this court has no interlocutory jurisdiction to review whether or not the pretrial record sets forth a genuine issue of fact for trial. The Supreme Court has indicated that, at the summary judgment stage at least, it is generally the district court's exclusive job to determine which facts a jury could reasonably find from the evidence presented to it by the litigants. So, for example, if a district court concludes that a reasonable jury could find certain specified facts

-10-

in favor of the plaintiff, the Supreme Court has indicated we usually must take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law.

*Roosevelt-Hennix*, 717 F.3d at 752 (citations, quotations, and alterations omitted); *see also Johnson* [*v. Jones*], 515 U.S. [304], 320 [(1995)] (establishing this jurisdictional limitation on appeals from the denial of summary judgment in qualified immunity cases).

It is certainly true that a mere determination on the part of a district court that genuine issues of material fact preclude summary judgment does not necessarily bar this court's exercise of appellate jurisdiction in a particular case. *See Henderson v. Glanz*, 813 F.3d 938, 947-48 (10th Cir. 2015). We have jurisdiction to review such denials of qualified immunity "if our review would [not] require second-guessing the district court's determinations of evidence sufficiency." *Id.* at 948 (quotation omitted). This court, then, has jurisdiction over appeals challenging the denial of a qualified-immunity-based motion for summary judgment only if a defendant-appellant does not dispute the facts a district court determines a reasonable juror could find but, instead, "raises only legal challenges to the denial of qualified immunity based on those facts." *Id.*

*Ralston*, 884 F.3d at 1066-67.

Defendants' briefs cannot reasonably be read for the proposition that the district court erred, on the facts it assumed for purposes of resolving whether summary judgment is appropriate, in concluding Gamel-Medler stated a clearly established violation of his right to equal protection. Instead, Defendants' appellate briefs are limited exclusively to the proposition that the district court erred in assessing the factual record. *See* Appellants' Br. at 30 ("Here, contrary to the District Court's holding, there simply is no evidence of discriminatory

-11-

animus on the part of the Appellants . . . ."); *id.* at 31 ("Here, the District Court held that Appellee 'has presented sufficient evidence–barely–to create a justiciable question as to whether these defendants' actions were motivated by a discriminatory purpose.' However, contrary to the District Court's determination in this regard there is no evidence to support this conclusion." (footnote omitted)); *id.* at 32-33 (setting out the evidence and asserting it is improper to draw the inference of discriminatory animus from that evidence). Although Defendants' briefs contain the buzz words "clearly established," they do so only in the context of a set of facts completely at odds with those assumed by the district court in denying their request for summary judgment. *See id.* at 33 ("Moreover, the District Court failed to cite to any legal authority which clearly establishes that an equal protection claim may be *premised upon such non-evidence of discriminatory intent*." (emphasis added)); Appellants' Reply Br. at 9 (asserting that none of the cases relied upon by the district court "clearly establishes that a § 1983 equal protection claim may be maintained in the absence of evidence of discriminatory intent"). Because Defendants' briefs amount to nothing more than an attack on the district court's determinations of evidentiary sufficiency, this court lacks jurisdiction over their appeal from the district court's

denial of their request for summary judgment as to Gamel-Medler's equal

protection claim.[9]

The same result is true with respect to their appeal from the district court's

denial of their request for summary judgment based on qualified immunity as to

Gamel-Medler's § 1985(3) conspiracy claim. That is, Defendants do not assert a

reasonable person in their position would be unaware that conspiring to deny

Gamel-Medler police protection based on the fact his son is African American

amounts to a violation of § 1985(3). Instead, they simply claim there is no

evidence of racial animus or conspiratorial agreement. *See* Appellants' Br. at 37

(asserting the district court "failed to cite to any legal authority which clearly

establishes that an officer can be held liable under § 1985(3) in the absence of

---

[9]Defendants are correct that in looking at the universe of facts for purposes of determining whether alleged conduct amounts to a clearly established constitutional violation, this court can disregard a district court evidentiary determination that is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). *Scott*, however, involved a video that conclusively rebutted the set of facts alleged by the plaintiff. Here, there is no evidence conclusively demonstrating the district court's determinations of evidentiary sufficiency are wrong. Instead, Defendants simply ask this court to dig into the record and determine, de novo, that there is not sufficient evidence of discriminatory animus. To read the "blatantly contradicted by the record" exception to non-reviewability so broadly would eviscerate the rule. *See Roosevelt-Hennix*, 717 F.3d at 759 (emphasizing the "limited nature" of the "blatantly contradicted by the record" exception). This is especially true given that the disputed fact focused upon by Defendants is one of purpose or intent. *See Ralston*, 884 F.3d at 1068 n.9 (noting that interlocutory appeals involving pretrial questions about "the existence or nonexistence of intent" are particularly inappropriate).

evidence of a conspiracy to deny a plaintiff the constitutional right to equal protection of the law"); *id.* at 38 ("[T]he record is completely devoid of any evidence which would raise a reasonable inference that the Appellants conspired together to violate the Appellee's right to equal protection of the laws."); *id.* at 38-39 ("[T]here is simply no evidence in the record that the Appellants conspired with each other to violate the Appellee's right to equal protection and the District Court's finding to the contrary is blatantly contradicted by the record. Moreover, the District Court failed to cite to any legal authority which would have put the Appellants on notice that they could be held liable under § 1985(3) in the absence of evidence of a conspiracy to deny a plaintiff the constitutional right to equal protection of the law."). As these quotations from their appellate briefs make clear, Defendants' appeal from the denial of their request for qualified immunity as to Gamel-Medler's conspiracy claim is limited to attacks on the district court's evidentiary determinations. Thus, this court lacks appellate jurisdiction over Defendants' appeal.

## IV. CONCLUSION

For those reasons set out above, the Defendants' appeal is hereby

**DISMISSED** for lack of appellate jurisdiction.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

*Gamel-Medler v. Almaguer, et al.*, No. 19-6129
**BACHARACH**, J., dissenting.

This appeal involves claims under 42 U.S.C. § 1983 and § 1985(3). Our jurisdiction is limited, and the defendants' briefs contain some arguments falling outside of our jurisdiction. But we have appellate jurisdiction over some of the defendants' arguments on the § 1983 claim and all of their arguments on the § 1985(3) claim. Given our jurisdiction over these arguments, I would reject them on the merits and affirm the denial of qualified immunity.

I.    **The sheriff and undersheriff refuse to let Mr. Gamel-Medler file a complaint.**

Because this is an interlocutory appeal of an order denying summary judgment on qualified immunity, we rely on the district court's assessment of the facts. *Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014); *see* pp. 3–4, below. We view the summary-judgment evidence in the light most favorable to Mr. Gamel-Medler. *Al-Turki*, 762 F.3d at 1191.

That evidence reflects plaintiff Mr. Randy Gamel-Medler's dissatisfaction with the conduct of defendants Sheriff Tony Almaguer and Undersheriff David Robertson. Mr. Gamel-Medler, a gay man with an African American son, tried to lodge complaints with the sheriff and undersheriff, which had stemmed from two confrontations with other residents in the town of Hitchcock. The sheriff and undersheriff refused to take the complaints.

The first confrontation took place when Mr. Gamel-Medler went to Ms. Jonita Pauls's trailer and asked her to move it from a public right-of-way. According to Mr. Gamel-Medler, Ms. Pauls used homophobic and racist slurs and threatened Mr. Gamel-Medler's son. According to Ms. Pauls and her parents, Mr. Gamel-Medler threatened Ms. Pauls.

A deputy sheriff responded to a call regarding the argument. When the deputy sheriff arrived, Mr. Gamel-Medler tried to file a complaint against Ms. Pauls, and the deputy sheriff refused to take the complaint on the ground that Ms. Pauls's alleged threat had constituted free speech. Mr. Gamel-Medler later asked again to file a complaint, and Sheriff Almaguer refused to take it.[1] But the sheriff's department accepted Ms. Pauls's complaint about Mr. Gamel-Medler's alleged threat.

The second confrontation involved Mr. Kenny Meier. Mr. Gamel-Medler had put a nuisance notice on property owned by Mr. Meier's mother. Mr. Meier replaced the notice with a sign that said: "Hay [sic] you QUEER $500 fine for treaspassing [sic]." After posting the sign, Mr. Meier confronted a friend of Mr. Gamel-Medler's and asked him if he was

---

[1]	At oral argument, the defendants said that Undersheriff Robertson had investigated Mr. Gamel-Medler's complaint about Ms. Pauls's threats. Oral Arg. at 13:51. But the defendants hadn't made this allegation until oral argument. And we're generally limited to the district court's assessment of the facts, which doesn't include Undersheriff Robertson's investigation into Mr. Gamel-Medler's complaint. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014).

2

"queer." Mr. Gamel-Medler tried to file a complaint, but Undersheriff

Robertson refused to accept it.

Mr. Gamel-Medler sued the sheriff and undersheriff, claiming

- a denial of equal protection under 42 U.S.C. § 1983 and

- a conspiracy to violate Mr. Gamel-Medler's right to equal protection under 42 U.S.C. § 1985(3).[2]

The sheriff and undersheriff moved for summary judgment based on

qualified immunity. But the district court denied qualified immunity,

concluding that Mr. Gamel-Medler's evidence was "barely" sufficient on

the claims under § 1983 and § 1985(3). The sheriff and undersheriff

appealed the denial of qualified immunity.

## II. We have jurisdiction to address some of the defendants' appellate arguments.

Mr. Gamel-Medler argues that we lack jurisdiction over this appeal,

and the majority agrees. I respectfully disagree.

### A. Jurisdictional limits exist on interlocutory review of the denial of qualified immunity.

We ordinarily lack jurisdiction over the denial of summary judgment

because the ruling doesn't trigger a final judgment. *Ortiz v. Jordan*, 562

U.S. 180, 188 (2011). An exception exists for the denial of summary

---

[2]    Mr. Gamel-Medler also asserted (1) a § 1983 claim based on retaliatory prosecution and (2) a conspiracy claim under state law. These claims are not at issue in the appeal.

3

judgment on the basis of qualified immunity. *Johnson v. Jones*, 515 U.S. 304, 312 (1995).

But this exception is limited. We cannot question the district court's assessment that a reasonable jury could find particular facts. *Id*. at 313. But we have jurisdiction to determine abstract legal issues, including "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) 'whether that law was clearly established at the time of the alleged violation.'" *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1267 (10th Cir. 2013) (quoting *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)). So we cannot review an argument that the evidence is insufficient to prove a fact; but we can review an argument that the facts are insufficient to prove a legal element. *Walton v. Powell*, 821 F.3d 1204, 1208 (10th Cir. 2016).

Although we generally can't revisit the summary-judgment record, two exceptions exist. We can revisit the record if

- the district court failed to identify the particular facts regarded as adequately supported (*Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)) or

- the district court's assessment of the facts was "blatantly contradicted by the record" (*Scott v. Harris*, 550 U.S. 372, 380 (2007); *Lewis*, 604 F.3d at 1225–26).

**B.    We have jurisdiction over some of the defendants' arguments.**

We have jurisdiction over

4

- some of the defendants' arguments on the § 1983 claim and

- all of the defendants' arguments on the § 1985(3) claim.

**1.    We have jurisdiction to review some of the defendants' arguments regarding the § 1983 claim.**

We have jurisdiction to review some, but not all, of the defendants' arguments for qualified immunity on the § 1983 claim. In my view, we have jurisdiction over the defendants' arguments that

- the district court's assessment of the facts would be legally insufficient to show the violation of a constitutional right and

- the right was not clearly established.

The defendants challenge the equal-protection claim, arguing in part that the facts would be legally insufficient to show discriminatory animus. In making this challenge, the defendants insist that "there is no evidence to support [the] conclusion" that they harbored discriminatory animus. Appellant's Opening Br. at 31. But the defendants do not challenge the district court's assessment of the facts. The defendants instead argue in two places that those facts do not support a finding of discriminatory animus.

First, the defendants argue:

The District Court states:

> That evidence includes the evidence of multiple refusals to accept complaints from plaintiff while accepting complaints, in arguably similar circumstances, from others not gay or not having the racial association bond. There is also evidence of the sheriff's and undersheriff's awareness of the unpopularity of

5

plaintiff on grounds that were, as to some members of the public, based on matters or race and sexual preference.

> However, alleged differential treatment alone does not create a presumption of discriminatory animus, and the District Court's reliance on the Appellants' alleged awareness of others' discriminatory attitudes improperly imputes the actions of other persons to Appellants and creates a *de facto* presumption of discriminatory animus on the part of the Appellants.

Appellants' Opening Br. at 31–32 (footnote omitted).

Second, the defendants argue:

> Finally, the District Court states that "the claimed refusal of the defendants to take a complaint, on the basis of Ms. Pauls being free speech, arguably supports the necessary inference." However, it is unclear how this allegation would support a reasonable inference that Appellant Almaguer was motivated by any class-based discriminatory animus. Again, alleged differential treatment alone does not create a presumption of discriminatory animus.

*Id.* at 33 (footnote omitted).

Both arguments fall within our jurisdiction because the defendants are not challenging the district court's assessment of the facts. Rather, the defendants are challenging the district court's conclusion that those facts create an equal-protection violation. *See* p. 4, above.

The defendants also challenge the district court's characterization of the right as clearly established:

> Moreover, the District Court failed to cite to any legal authority which clearly establishes that an equal protection claim may be premised upon such non-evidence of discriminatory intent. *Phelps*, *supra*, . . . did not address any evidentiary issues. In *Price-Cornelison*, the existence of discriminatory animus was not at issue . . . . Finally, *DeShaney*, *supra*[,] involved a due

6

process claim, not an equal protection claim . . . . As such, these cases would not have placed the Appellants on notice that their alleged actions were in violation of the Appellee's constitutional rights.

Appellants' Opening Br. at 33–34 (citation omitted). We have jurisdiction to review this challenge, which involves an abstract legal issue independent of the district court's assessment of the facts. *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 753 (10th Cir. 2013).

The defendants also ask us to revisit the record. We are generally unable to do so, but exceptions apply when (1) the district court doesn't identify the facts that a reasonable jury could find or (2) the district court's findings are blatantly contradicted by the record. *See* p. 4, above. These exceptions don't apply here.

The defendants' language suggests that they are challenging the district court's failure to identify the facts. For example, the defendants address the district court's recognition of evidence involving the undersheriff's negative comments about Mr. Gamel-Medler. Addressing this characterization of the evidence, the defendants argue that "the record is devoid of any adverse comment by [Undersheriff] Robertson demonstrating any class-based discriminatory animus against [Mr. Gamel-Medler]." Appellants' Opening Br. at 32. Through this argument, the defendants appear to rely on the district court's failure to set forth the facts with specificity. But the district court did identify the supporting

7

facts, which consisted of Undersheriff Robertson's comments. So we lack jurisdiction to consider this part of the defendants' argument.

The defendants also argue that the record blatantly contradicts the district court's assessment that a reasonable jury could find discriminatory intent. But the district court's assessment of discriminatory intent was reasonable based on evidence that

1. the sheriff and undersheriff would not take Mr. Gamel-Medler's complaints (Appellants' App'x, vol. 7, at 1454, 1458),

2. the other residents had disliked Mr. Gamel-Medler in part because of his sexual orientation and the race of his child (*id.,* vol. 1, at 86),

3. the defendants had made negative comments about Mr. Gamel-Medler (*id.*, vol. 7, at 1420, 1524–25, 1644), and

4. the defendants had said that other residents' threats were protected by the First Amendment (*id.* at 1454, 1459, 1534).

*See* pp. 14–17, below. So the record did not blatantly contradict the district court's assessment of the evidence on discriminatory intent. We thus lack jurisdiction over these arguments.

**2. We have jurisdiction to review the defendants' arguments regarding the § 1985(3) claim.**

We can also review the defendants' arguments on the § 1985(3) claim. On this claim, the defendants

8

- deny the violation of a clearly established right and the legal sufficiency of concerted action to imply a conspiracy and

- rely on the jurisdictional exceptions involving a failure to specify the facts and the existence of findings contradicting the record.

First, the defendants argue that the assessed facts would not constitute a violation of clearly established law because sexual orientation is not a protected class for purposes of § 1985(3):

> [T]he District court wholly failed to cite to any legal authority in refutation thereof [that sexual orientation is not a protected classification under § 1985(3)]. The District Court's reliance on *Price-Cornelison*, *supra.*, is of no legal significance in this regard because it is a § 1983 case, not a § 1985(3) case, and thus, cannot serve to clearly establish that sexual orientation is a protected classification within the meaning of § 1985(3).

Appellants' Opening Br. at 37.

In making this argument, the defendants are not questioning the district court's assessment of the facts; the defendants are instead arguing that those facts (which suggest discrimination based on sexual orientation) cannot show a legal violation; this is a legal issue that falls within our jurisdiction. *See* p. 4, above.

Second, the defendants argue that "concerted action alone is not legally sufficient to raise a reasonable inference of a conspiracy to violate [the] right to equal protection of the law." Appellants' Opening Br. at 38. We have jurisdiction to review this argument because it entails a pure legal issue. *See* p. 4, above.

9

Finally, some of the defendants' arguments fall within the exceptions to the general rule against revisiting the record. For example, the defendants argue that

- the district court failed to specify the facts preventing qualified immunity based on an agreement and

- the finding of an agreement was blatantly contradicted by the record.

These arguments fall within our jurisdiction. *See* p. 4, above.

\* \* \*

We have jurisdiction to review some of the defendants' arguments on the § 1983 claim and all of the arguments on the § 1985(3) claim, so I would address the merits of the rulings on qualified immunity.

**III.  The district court correctly denied qualified immunity to the defendants.**

In my view, the district court correctly denied qualified immunity to the defendants. On the claims under §§ 1983 and 1985(3), the court reasoned that its assessment of the facts would have entailed the violation of a clearly established constitutional right. I agree with the court's reasoning on both claims.

**A.  The district court correctly denied qualified immunity on the § 1983 claim.**

On the § 1983 claim, the district court identified facts showing the violation of a clearly established constitutional right.

10

**1.    We base our review on the facts as assessed by the district court.**

In reviewing a denial of qualified immunity, we rely on the district court's assessment of the facts taken in the light most favorable to the plaintiff. *Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014). Engaging in de novo review, we assess "whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established . . . right." *Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012) (quoting *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 147 (3d Cir. 2002)). If the facts identified by the district court would have violated a clearly established federal right, we must uphold the denial of qualified immunity. *Id.*

**2.    The facts identified by the district court would show the violation of a constitutional right.**

Through his § 1983 claim, Mr. Gamel-Medler alleges that the defendants violated his constitutional right to equal protection. The right to equal protection is enshrined in the Fourteenth Amendment's Equal Protection Clause, which prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006)

11

(quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

We ordinarily analyze equal-protection claims in two steps. We first determine whether the challenged state action intentionally discriminates between groups. *Washington v. Davis*, 426 U.S. 229, 240 (1976). If we identify any intentional discrimination, we consider whether the different treatment is justified. *City of Cleburne*, 473 U.S. at 439–42 (1985).

Mr. Gamel-Medler claims inferior police protection because of his sexual orientation and association with his African-American son. Either reason could trigger an equal-protection violation. *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1113 (10th Cir. 2008) (sexual orientation); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269–70 (10th Cir. 1989) (race-based association).[3] Though Mr. Gamel-Medler wouldn't ordinarily enjoy a constitutional right to police protection, state actors cannot discriminate in providing police protection. *Watson v. City of Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

The district court's factual assessment reflects a difference in the treatment afforded to Mr. Gamel-Medler. For example, Mr. Gamel-Medler

---

[3]    At oral argument, the defendants asserted that the district court should have split the claim based on Mr. Gamel-Medler's groups, granting summary judgment on the allegations involving sexual orientation and denying summary judgment on the allegations involving race. Oral Arg. at 11:41. I would decline to consider this assertion because it didn't appear in the briefs. *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1294 (10th Cir. 2017).

12

tried three times to file a complaint with the Sheriff's Department: twice after confronting Ms. Pauls and once after quarrelling with Mr. Meier. But the sheriff and undersheriff declined to take Mr. Gamel-Medler's complaints while taking Ms. Pauls's complaint.[4] The fact-finder could reasonably regard Mr. Gamel-Medler as similarly situated with Ms. Pauls because they tried to file complaints against each other based on the other's alleged threats. And based on the facts assessed by the district court, the sheriff and undersheriff treated Mr. Gamel-Medler differently than Ms. Pauls.[5]

Intentional discrimination also requires discriminatory intent. Discriminatory intent exists only if the defendants took the challenged

---

[4]  At oral argument, the defendants denied unequal treatment, arguing that the sheriff's office had accepted Ms. Pauls's complaint at a different time. Oral Arg. at 6:32. But "arguments made for the first time at oral argument are waived." *Ross*, 859 F.3d at 1294. Even if the argument had not been waived, the timing would not explain why the sheriff's office took Ms. Pauls's complaint and rejected Mr. Gamel-Medler's complaints.

[5]  In addressing this issue, the district court stated: "While the evidence falls far short of clearly establishing differential treatment, the court is obliged in this context to view the evidence in the light most favorable to the plaintiff and concludes he has made a sufficient showing as to this element." Appellants' App'x, vol. VIII, at 1905–06. The defendants suggest that this sentence is "self-contradictory," asserting that if Mr. Gamel-Medler has failed to clearly establish differential treatment, he would have failed to make a sufficient showing on this element. Appellants' Opening Br. at 30. But this sentence is not self-contradictory. At the summary-judgment stage, Mr. Gamel-Medler didn't need to "clearly establish" differential treatment; he needed only to create a genuine fact-issue on the difference in treatment. *See* Fed. R. Civ. P. 56(a).

13

action at least partly "'because of,' not merely 'in spite of,' [the] adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S 256, 279 (1979). To discern intent, courts consider the impact of the challenged action, the historical background of the action, the specific sequence of events leading to the action, the departures from normal procedures, and the statements by decisionmakers at the time of the decision. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977).[6]

The district court identified four types of evidence on discriminatory intent:

1.  The sheriff and undersheriff had repeatedly refused to take Mr. Gamel-Medler's complaints,

2.  the other residents had disliked Mr. Gamel-Medler based at least in part on his sexual orientation and the race of his child,

3.  the sheriff and undersheriff had made negative comments about Mr. Gamel-Medler, and

4.  the sheriff and undersheriff had said that other residents' threats were protected by the First Amendment.

---

[6]     The defendants try to distinguish *Price-Cornelison v. Brooks,* 524 F.3d 1103 (10th Cir. 2008), where we upheld the denial of qualified immunity to a sheriff who had discriminated against a lesbian victim of domestic violence. As the defendants point out, the county there had a policy openly discriminating against lesbian victims of domestic violence. *Price-Cornelison*, 524 F.3d at 1110. Although no openly discriminatory policy exists here, Mr. Gamel-Medler can use circumstantial evidence of discriminatory intent. *See* text accompanying note.

14

This combination of evidence is enough to create a reasonable inference of discriminatory intent.

First, the district court identified evidence that the sheriff and undersheriff had treated Mr. Gamel-Medler differently, refusing to take his complaints while taking Ms. Pauls's complaint. Although differential treatment does not establish discriminatory intent, a stark pattern of differential treatment can be used to prove discriminatory intent.[7] *Vill. of Arlington Heights*, 429 U.S. at 266. So discriminatory treatment can reasonably be inferred from the repeated refusals to allow Mr. Gamel-Medler to file a complaint.

In addition, the district court's factual assessment suggests the defendants' knowledge that other residents had shunned Mr. Gamel-Medler based partly on his sexual orientation and the race of his son. So the defendants' knowledge of other residents' hostility toward Mr. Gamel-Medler could reasonably support an inference of discriminatory intent. *See Hodges ex rel. Hodges v. Public Bldg. Comm'n of Chicago*, 864 F. Supp.

---

[7] Mr. Gamel-Medler cites opinions stating that disparate treatment can prove discriminatory intent. Appellee's Resp. Br. at 7 n.3 (citing *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017); *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1238 (10th Cir. 1991); *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988)). But these are employment cases addressing liability under Title VII and the Family Medical Leave Act, not § 1983.

15

1493, 1502 (N.D. Ill. 1994) (finding discriminatory intent when public officials halted construction in the face of racially based opposition).

The district court also pointed to the defendants' negative statements about Mr. Gamel-Medler. The defendants deny any evidence of those comments. But we lack jurisdiction to revisit the summary-judgment record on these grounds. *See* pp. 7–8, above.

The defendants also attribute their negative comments to their perception of Mr. Gamel-Medler as a troublemaker (unrelated to his sexual orientation or the race of his son). This explanation is reasonable. But one could also reasonably infer that the defendants had regarded Mr. Gamel-Medler as a troublemaker only because of his sexual orientation and the race of his son. So the defendants' negative comments could reasonably support an inference of discriminatory intent.

Finally, the district court pointed to the defendants' explanation for their refusal to take the complaints. The defendants explained that the other residents' comments about Mr. Gamel-Medler and his son had been protected by the First Amendment. But the other residents' comments could be seen as implicit threats, which would not be protected by the First Amendment. *See, e.g.*, *Watts v. United States*, 394 U.S. 705, 707–08 (1969) (per curiam) (concluding that "true threat[s]" are not protected by the First Amendment). So the defendants' explanation could be pretextual, masking

16

the real reasons for refusing to take the complaints[8] and suggesting

discriminatory intent.

When viewed in the light most favorable to Mr. Gamel-Medler, the

facts assessed by the district court could support a reasonable inference of

discriminatory intent. Though no single bit of circumstantial evidence is

strong enough to show discriminatory intent, the "totality of the relevant

facts" permits a reasonable inference of discriminatory intent. *Washington*

*v. Davis*, 426 U.S. 220, 242 (1976).[9]

Because the district court's assessment of the facts could show

intentional discrimination against Mr. Gamel-Medler, we consider whether

the deficient treatment was justified. *See* p. 12, above. The appropriate

level of scrutiny depends on whether the discrimination involves a

fundamental right or suspect classification. *See Feeney*, 442 U.S. at 272–

73. If neither a fundamental right nor a suspect classification is involved,

---

[8]    At oral argument, the defendants said that Undersheriff Robertson had investigated Mr. Gamel-Medler's complaint about Ms. Pauls's threats. Oral Arg. at 13:51. The defendants hadn't made this allegation until oral argument. And we're generally limited to the district court's assessment of the facts, which doesn't include the investigation into Mr. Gamel-Medler's complaint. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014).

[9]    The defendants argue that the finding of discriminatory intent was blatantly contradicted by the record. But we lack jurisdiction to consider this argument. *See* p. 8, above.

we apply rational-basis scrutiny, which requires a rational relationship between the differential treatment and a legitimate state interest. *Id*.

Even under the rational-basis standard, the differential treatment of Mr. Gamel-Medler would violate his right to equal protection. The defendants explained that the other residents' statements had been protected by the First Amendment. But the First Amendment does not protect all of these statements. *See* pp. 16–17, above. So a fact-finder could justifiably infer that the sheriff and undersheriff had lacked a legitimate reason for refusing to take Mr. Gamel-Medler's complaints. *See Price-Cornelison*, 524 F.3d at 1114 (concluding that the record revealed no rational reason to provide less police protection to lesbian victims of domestic violence than to heterosexual victims of domestic violence). Without a rational reason to refuse Mr. Gamel-Medler's complaints, the refusal would constitute a denial of equal protection.

### 3. The denial of equal protection would have violated a clearly established right.

To defeat a motion for qualified immunity, the plaintiff must show that the federal right was clearly established. *See* p. 11, above.

In my view, Mr. Gamel-Medler made this showing. Two of our circuit's precedents—*Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988) and *Price-Cornelison v. Brooks*, 524 F.3d 1103 (10th Cir.

18

2008)—clearly establish the impermissibility of denying police protection for a discriminatory reason.

A right is clearly established when "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This inquiry is designed "to ensure that . . . officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Notice can come from an on-point Supreme Court opinion, a Tenth Circuit precedent, or the weight of authority from other circuits. *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *overruled on other grounds by Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).

In this case, the defendants had notice based on *Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988), and *Price-Cornelison v. Brooks*, 524 F.3d 1103 (10th Cir. 2008).

*Watson* involved a police department's refusal to provide protection to victims of domestic violence. *Watson*, 857 F.2d at 692–93. We concluded that this refusal had constituted a violation of equal protection because the police could not discriminate in providing police protection. *Id*. at 698.

In *Price-Cornelison*, a lesbian victim of domestic violence claimed that the undersheriff had not enforced her protective order because of her sexual orientation. *Price-Cornelison*, 524 F.3d at 1105. We upheld the

19

denial of qualified immunity to the sheriff, holding that *Watson* had "put [the undersheriff] on notice that providing [the plaintiff] less police protection than other domestic violence victims because she is lesbian would deprive her of equal protection of the law." *Id*. at 1114–15.

*Watson* and *Price-Cornelison* clearly establish that denying police protection for a discriminatory reason would violate the right to equal protection. And *Price-Cornelison* clearly established an equal-protection violation from the denial of protection based on a victim's sexual orientation. Given these precedents, the defendants should have known that denial of police protection for discriminatory reasons would constitute a denial of equal protection.

The defendants argue that these precedents are too general to clearly establish the law. But these precedents are not general, and their fact patterns closely mirror the facts here. For example, in *Price-Cornelison* and in our case, the plaintiffs claimed that a law-enforcement officer had failed to provide police protection based on the victim's sexual orientation.[10] Under this precedent, the right was clearly established.[11]

---

[10] The defendants argue that *Price-Cornelison* is distinguishable because that case involved an openly discriminatory policy and a victim of domestic violence. Despite these differences, *Price-Cornelison* clearly establishes that discriminatory denial of police protection would violate the right to equal protection.

[11] The defendants argue that no cases clearly establish "that an equal protection claim may be premised upon such non-evidence of

20

### B. The district court correctly denied qualified immunity on the § 1985(3) claim.

I would also affirm the denial of qualified immunity on Mr. Gamel-Medler's § 1985(3) claim. In my view, the facts identified by the district court would establish the violation of a clearly established federal right.

#### 1. The facts identified by the district court are sufficient to establish the violation of Mr. Gamel-Medler's rights under § 1985(3).

The facts identified by the district court would have violated Mr. Gamel-Medler's rights under § 1985(3). For a § 1985(3) claim, the plaintiff must show "(1) a conspiracy; (2) to deprive [the] plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). In my view, the facts identified by the district court would satisfy all of these requirements.

First, the facts identified by the district court could reasonably establish a conspiracy. The district court characterized the evidence as thin but regarded it as enough to imply a conspiracy between the defendants.

---

discriminatory intent." Appellants' Opening Br. at 33. But the defendants seem to deny a constitutional violation based on the facts rather than the absence of a clearly established right. In my view, the district court's assessment of facts would have entailed a constitutional violation. *See* p. 18, above.

The defendants argue that this characterization is unsupported by specific facts and blatantly contradicted by the record.

I disagree. The sheriff testified that he'd conferred with the undersheriff during a quarrel between Mr. Gamel-Medler and the other residents. In addition, the sheriff and undersheriff refused to take Mr. Gamel-Medler's complaints on the ground that the other residents' comments had been protected under the First Amendment. Given the evidence of pretext, the defendants' explanation suggests collaboration to deprive Mr. Gamel-Medler of his right to police protection. *See* pp. 16–18, above. So the summary-judgment record didn't blatantly contradict the district court's assessment of the evidence.

The fact-finder could also reasonably infer an intent to deprive Mr. Gamel-Medler of his right to equal protection. To prove a § 1985(3) claim, the plaintiff must show an intent to deprive someone of equal protection. *Tilton*, 6 F.3d at 686. The district court's assessment of the facts could show an intent to deprive Mr. Gamel-Medler of equal protection by disallowing his filing of a complaint. *See* pp. 15–18, above.

The facts also show that the defendants took overt acts in furtherance of the conspiracy. For example, the defendants rejected Mr. Gamel-Medler's complaints while taking the complaints of others who did not share his sexual orientation or have an African-American child. *See* pp. 16–17, above.

22

Finally, the facts are sufficient to find that the conspiracy resulted in an injury to Mr. Gamel-Medler. The conspiracy prevented Mr. Gamel-Medler from filing a complaint and seeking protection for himself and his son from the Sheriff's Department. So when taken in the light most favorable to Mr. Gamel-Medler, the district court's factual assessment shows a violation of § 1985(3).

**2.      That violation would have been clearly established.**

In my view, the violation would have been clearly established. A right is clearly established when public officials have notice that their conduct is unlawful based on an on-point Supreme Court opinion, Tenth Circuit opinion, or the weight of authority from other circuits. *See* p. 19, above. Based on these sources, the defendants should have been on notice that their conduct was unlawful under § 1985(3).

The defendants argue that Mr. Gamel-Medler's rights under § 1985(3) were not clearly established because neither our court nor the Supreme Court has held that § 1985(3) claims can be based on sexual orientation. But Mr. Gamel-Medler also claims discrimination based on the race of his son, and the Supreme Court has long recognized § 1985(3) claims based on race. *E.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). So a § 1985(3) violation would have been clearly established.[12]

---

[12]      The defendants argue that the district court erred by "fail[ing] to cite to any legal authority which clearly establishes that an officer can be held

23

* * *

When viewed in the light most favorable to Mr. Gamel-Medler, the district court's factual assessment would entail the violation of a clearly established right. So I would affirm the denial of qualified immunity.

## IV. Conclusion

In my view, we have jurisdiction over some of the defendants' appellate arguments. Though the defendants contest the district court's assessment of the facts, the defendants also challenge the district court's characterization of the conduct as a violation of clearly established rights. Those challenges fall within our jurisdiction. Though we have jurisdiction over those arguments, the district court's conclusion was correct. So I would affirm the denial of qualified immunity.

---

liable under § 1985(3) in the absence of evidence of a conspiracy." Appellants' Opening Br. at 37. Here, the defendants seem to deny a violation of § 1985(3) rather than to question the existence of a clearly established right. In my view, however, the facts could imply a violation of § 1985(3).

24